FILED

2010 Mar-29  PM 05:08
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | | |
|---|---|---|
| ELIZABETH A. ROBINSON, | ] | |
| | ] | |
| Plaintiff, | ] | |
| | ] | |
| vs. | ] | 5:08-CV-1710-LSC |
| | ] | |
| MICHAEL J. ASTRUE, | ] | |
| Commissioner, | ] | |
| Social Security Administration, | ] | |
| | ] | |
| Defendant. | ] | |

MEMORANDUM OF OPINION

I.    Introduction.

The plaintiff, Elizabeth A. Robinson, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her applications for a period of disability and disability insurance benefits ("DIB").  Ms. Robinson timely pursued and exhausted her administrative remedies, and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Ms. Robinson was forty-four years old at the time of the Administrative Law Judge's ("ALJ's") decision, and she has at least a high school education.

(Doc. 8 at 4.)  Her past work experience includes employment as a gasket molder, inspector and fast food worker.  *Id*.  Ms. Robinson claims that she became disabled on May 10, 2005, due to back problems, thyroid, depression, and carpal tunnel.  *Id*. at 2.

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process.  *See* 20 C.F.R. § 404.1520; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001).  The first step requires a determination of whether the claimant is "doing substantial gainful activity."  20 C.F.R. § 404.1520(a)(4)(i).  If he or she is, the claimant is not disabled and the evaluation stops.  *Id*.  If he or she is not, the Commissioner next considers the effect of all of the physical and mental impairments combined.  20 C.F.R. § 404.1520(a)(4)(ii).  These impairments must be severe and must meet the durational requirements before a claimant will be found to be disabled.  *Id*.  The decision depends on the medical evidence in the record.  *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971).  If the claimant's impairments are not severe, the analysis stops.  20 C.F.R. § 404.1520(a)(4)(ii).  Otherwise, the analysis

continues to step three, which is a determination of whether the claimant's impairments meet or equal the severity of an impairment listed in 20 C.F.R. pt. 404, subpt. P, Appendix 1.  20 C.F.R. § 404.1520(a)(4)(iii).  If the claimant's impairments fall within this category, he or she will be found disabled without further consideration.  *Id.*  If they do not, a determination on the claimant's residual functional capacity ("RFC") will be made and the analysis proceeds to the fourth step.  20 C.F.R. § 404.1520(e).

The fourth step requires a determination of whether the claimant's impairments prevent him or her from returning to past relevant work.  20 C.F.R. § 404.1520(a)(4)(iv).  If the claimant can still do his or her past relevant work, the claimant is not disabled and the evaluation stops.  *Id.* If the claimant cannot do past relevant work, then the analysis proceeds to the fifth step.  *Id.*  Step five requires the court to consider the claimant's RFC, as well as the claimant's age, education, and past work experience in order to determine if he or she can do other work.  20 C.F.R. § 404.1520(a)(4)(v).  If the claimant can do other work, the claimant is not disabled.  *Id.*

Applying the sequential evaluation process, the ALJ found that Ms. Robinson "meets the insured status requirements of the Social Security Act through December 1, 2006." (Tr. at 17.)  He further determined that Ms. Robinson has not engaged in substantial gainful activity since the alleged onset of her disability.  *Id.*  According to the ALJ, Plaintiff has the "following severe impairments: history of hypothyroidism, depression, carpal tunnel syndrome, and re-fusion of L4-5."  *Id.*  However, he found that these impairments neither meet nor medically equal any of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.  *Id.* at 19.  The ALJ determined that Ms. Robinson has the residual functional capacity to

> perform sedentary with a sit/stand option, never work with ladders, ropes, and scaffolds, occasionally climb ramps/stairs, balance, stoop, kneel, crouch, and crawl.  Can understand and remember simple tasks but not detailed tasks; find locations and follow simple directions.  Can maintain attention to simple tasks for 2 hours with no special supervision but not concentrate for extended periods.  Contact with the public should be casual and criticism non-confronting.  Changes in work setting should be gradually introduced.

*Id.*

The ALJ then determined Plaintiff is not capable of performing past

relevant work (Tr. at 21.)  However, based on Plaintiff's age, education, work experience, and RFC, the ALJ determined there are a number of jobs in the national economy that Plaintiff can perform.  *Id*. at 22.  Based on the testimony of a vocational expert ("VE"), these jobs include work as a final assembler (700 jobs state-wide; 39,000 nationally), sorter (600 jobs state-wide; 37,000 nationally), and inspector (600 jobs state-wide; 68,000 nationally).  *Id*.  Accordingly, the ALJ entered a finding that Plaintiff "has not been under a 'disability,' as defined in the Social Security Act, from May 10, 2005 through the date of this decision."  *Id*.

II.     Standard of Review.

The Court's role in reviewing claims brought under the Social Security Act is a narrow one.  The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).  The Court approaches the factual findings of the Commissioner with deference, but applies close scrutiny to the legal conclusions.  *See Miles v. Chater*, 84 F.3d

1397, 1400 (11th Cir. 1996). The Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Id.* "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Robinson v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if this Court finds that the evidence preponderates against the Commissioner's decision, the Court must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400. No decision is automatic, however, for "despite this deferential standard [for review of claims] it is imperative that the Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

III.   Discussion.

Ms. Robinson alleges that the ALJ's decision should be reversed because it is not supported by substantial evidence and applicable law for one reason.  (Doc. 8.)  Specifically, Plaintiff claims the ALJ's "RFC findings were not based on any medical opinion in the format required to meet the specificity requirements of SSR 96-8p for the entire period at issue."  *Id*. at 12.

An individual's RFC is an example of an issue that is administrative in nature, not a medical issue.  Soc. Sec. Rul. 96-5p, 1996 WL 374183 at *2 (S.S.A.).    The Commissioner decides administrative issues and the Commissioner's regulations put the ultimate responsibility of determining RFC with the ALJ.    *See* 20 C.F.R. §§ 404.1527(e)(2), 404.1545(a)(3), 404.1546(c), 416.927(e)(2), 416.945(a)(3), 416.946(c); SSR 9605p, 1996 WL 374183 at *5.  According to Soc. Sec. Rul. 96-8p, "[t]he RFC assessment must always consider and address medical source opinions.  If an RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted."  1996 WL 374184 (S.S.A.).  His decision must be based not only upon the medical evidence, but upon all evidence in the record.  *Id*.  Further, while medical opinions are to be

weighed by the ALJ, an RFC finding will not be invalidated due to the absence or discrediting of a medical opinion. *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005).

In all social security disability cases, the claimant bears the ultimate burden of proving disability, and is responsible for furnishing or identifying medical and other evidence regarding her impairments. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Doughty v. Apfel*, 245 F.3d. at 1278; 42 U.S.C. § 423(d)(5) ("[a]n individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require"). The regulations also establish that the claimant's burden is to provide the relevant medical and other evidence she believes will prove her alleged disability. *See* 20 C.F.R. § 404.1512(a) and (c). Moreover, the claimant's burden is to provide a medical record that is complete, and if he or she fails to do so, the ALJ will make a decision based on the evidence of record. *See* 20 C.F.R. §§ 404.1513(e), 404.1516.

In the instant case, Plaintiff claims the ALJ "rejected Ms. Robinson's testimony and allegations as well as every opinion except that of the State

Agency on the most spurious untenable rationales."  (Doc. 8 at 8-9).

Plaintiff repeatedly contends the ALJ did not provide reasons as to why he

rejected particular evidence.  *Id*. at 9.

The ALJ considered a letter, dated November 27, 2006, from Dr. Amit

Vora, Plaintiff's internist.[1]  As the ALJ noted, Dr. Vora found Plaintiff to be

totally disabled based on her "generalized weakness, severe anemia,

hypothryroidism, moderate severe degenerative disc disease of the lumbar

spine, obesity, bilateral calcaneal spurs with history of bilateral carpal

tunnel syndrome and history of weakness in the hand grip." (Tr. at 19, 228).

However, the ALJ correctly gave little weight to the opinion of Dr. Vora, not

only because "the issue of whether the claimant is 'disabled' or unable to

work is an issue reserved to the Commissioner" (20 C.F.R. § 416.927(e)), but

also because there was no supporting documentation with Dr. Vora's letter.

(Tr. at 21).

The ALJ also determined the opinion of Dr. John R. Haney was entitled

---

[1]Plaintiff points to a letter from Dr. Vora dated November 8, 2004, in which Dr. Vora noted Plaintiff's complaints and his opinion that Plaintiff was totally disabled. (Doc. 8 at 5).  However, this letter was before the alleged onset date of disability. Even so, this letter, like the November 27, 2006 letter, is not supported by any further documentation.

to little weight.  *Id*. at 21.  Dr. Haney performed a consultative psychological examination of Plaintiff on August 30, 2005.  *Id*. at 18, 162-63. As the ALJ noted, based on Plaintiff's appearance and her own complaints, Dr. Haney determined Plaintiff was suffering from "major depression and pain disorder" and that her "ability to function in most jobs appeared severely impaired due to her *physical* and emotional limitations and her condition will probably remain unchanged in the next twelve months."  *Id*. (emphasis added).  However, the ALJ found Dr. Haney's opinion was "totally lacking in objective test" and "based solely on statements by the claimant which he accepts totally."  *Id*. at 21.  The ALJ further noted that Dr. Haney is not a medical doctor, and therefore not qualified to make a determination concerning Plaintiff's physical limitations, nor was he a treating physician. *Id*.

The ALJ "partially accepted" the opinion of Dave Bledsoe, OTR, a registered occupational therapist.[2]  (Tr. at 21).  On December 16, 2005, Mr.

_____

[2]The ALJ only "partially accepted" Mr. Bledsoe's opinion because while Mr. Bledsoe is a physical therapist, physical therapists are not acceptable medical sources.  *Id*. at 21; *See* 20 C.F.R. § 404.1513(a).  However, 20 C.F.R. § 404.1513(d) provides that the ALJ may consider other sources, including therapists, "to show the severity of [a plaintiff's] impairment and how it affects [their] ability to work."

Bledsoe performed an objective independent practical assessment on Plaintiff.  The ALJ noted that Mr. Bledsoe determined Plaintiff "would require restrictions secondary to her numerous complaints and demonstrated difficulties with all tasks" and "would require a sitting occupation if she returned to duty." *Id*. at 18, 165.  Nonetheless, Mr. Bledsoe further opined as to Plaintiff''s RFC, she "can stand 'occasional'" or, "if allowed sitting with opportunity to shift and change positions," "frequent." *Id*. at 21, 166.

While the ALJ gave little to partial weight to the opinions discussed above, he noted several other opinions upon which he placed a good deal of weight.  On August 29, 2005, Dr. Bharat Vakharia performed a consultative physical examination of Plaintiff.  (Tr. at 17, 157-61).  As noted by the ALJ, Dr. Vakharia reported that examination of Plaintiff "revealed fairly normal cervical spine and shoulder movement", "good hand grip", "walked with normal gait", and despite having multiple injections, Plaintiff "continues to report relief from these." *Id*. at 17, 158-59.  However, Dr. Vakharia also diagnosed Plaintiff as having "moderately severe low back pain with radiculopathy not responding to surgery or pain medication, chronic fatigue, depression, and hypothryroidism." *Id*. at 17.

The ALJ further commented on the records of Plaintiff's treating physician, Dr. Danny Michael, who examined Plaintiff on multiple occasions during the period at issue.[3]  (Tr. at 173-94).  On May 25, 2005, his notes state that status post re-fusion "showed good position of the graft."  *Id*. at 20, 186.  Dr. Michael's notes go on to indicate that Plaintiff had "multiple trigger point injections and physical therapy" and that as of June 26, 2006, she "continues to get some benefits out of the injections."  *Id*. at 18, 177.  As to the benefit however, Dr. Michael questioned "[w]hether this is some local benefit or actually a supratentorial benefit just because we are doing something for her."  *Id*.  Lastly, the ALJ noted Dr. Michael's determination in July 2005 that "x-rays show progressive healing of the non union area."  *Id*. at 20, 185.

Despite the above-noted records, the ALJ failed to acknowledge several other comments made by Dr. Michael.  On September 14, 2005, Dr. Michael noted that Plaintiff was "still having quite a bit of pain" and her

---

[3]In July 2001, Plaintiff underwent an anterior lumbar interbody fusion at the L4-5 level.  (Tr. at 17).  In May 2005, Plaintiff was examined by Dr. Michael due to increased back and leg pain, at which time he diagnosed her as having a non-fusion.  Dr. Michael referred Plaintiff to Dr. David L. Rader in May 2005 for a re-fusion of her previous anterior lumbar interbody fusion at the L4-5.  *Id*.

Oxycontin was increased from twice daily to three times daily.  (Tr. at 184).
On October 19, 2005, Plaintiff had increasing hip discomfort.  Dr. Michael
noted this appeared to be some adjacent bursitis over the hip, was
secondary to her back and he injected the bursitis over the hip.  *Id.* at 183.
An x-ray was taken on December 7, 2005, at which time Dr. Michael noted
the previous fusion site was not completely solid but the back was clinically
improving.  Plaintiff was once again injected.  *Id.* at 182.  On March 16,
2006, Dr. Michael noted that Plaintiff "is still having chronic pain."  Plaintiff
reported "localized discomfort over the left hip" and some back pain.  Dr.
Michael again injected Plaintiff.  *Id.* at 179.  Finally, with injections
continuing (*Id.* at 175-78), Dr. Michael increased her dose of Oxycontin to
60 mg three times a day in August 2006, and then to 80 mg in October 2006.
*Id.* at 174, 226.  Neither the increases in medication, nor Plaintiff's frequent
complaints of pain were noted by the ALJ.

The ALJ gave "some" weight to the opinions of the State Disability
Determination Services physicians, Dr. Frank Nuckols, a psychological
consultant, and Dr. Stuart Stephenson.  Dr. Nuckols, who evaluated Plaintiff
on September 6, 2005 (only one week after Dr. Haney's psychological

consultative evaluation), gave Dr. Haney's opinion "sig[nificant] wt.", with the exception of assessing Plaintiff's mental RFC as being no more than moderately limited in any area.  (Tr. at 21, 199-215).  Dr. Stephenson evaluated Plaintiff on September 9, 2005, and determined that Plaintiff could occasionally lift and/or carry 10 pounds, frequently lift and/or carry less than 10 pounds, stand and/or walk for a total of at least 2 hours in an 8-hour workday, sit for a total of about 6 hours in an 8-hour workday, unlimited ability to push and/or pull, occasionally climb ramp/stairs, balance, stoop, kneel, crouch, crawl, and never climb ladder/rope/scaffolds.  *Id*. at 217-22.  Dr. Stephenson further noted that, while Plaintiff's complaints of back pain were credible, there was nothing to support her claims of limitations due to hypothyroidism or carpal tunnel syndrome.  *Id*. at 222.  Dr. Stephenson also took note of Dr. Vora's November 8, 2004 letter stating that Plaintiff was "currently totally disabled,"[4] however Dr. Stephenson gave little weight to that statement as it was made prior to Plaintiff's re-fusion.

As to the State Agency physicians, the ALJ specifically recognized that,

---

[4]*See supra* note 1.

while these physicians were non-examining, and "therefore their opinions do not as a general matter deserve as much weight as those of examining or treating physicians, their opinions do deserve some weight, particularly in a case like this in which there exists a number of reasons to reach similar conclusions." (Tr. at 21). However, while the ALJ is correct that these opinions do deserve some weight, it does not appear to this Court that there were a "number of reasons to reach similar conclusions." Only the portions of Dr. Michael's records cited by the ALJ tend to support the opinions of Dr. Stephenson. Further, Dr. Nuckols opinion is largely based on Dr. Haney's evaluation, which the ALJ discounted.[5]

Although it is true that it is the plaintiff who bears the burden of proving disability, and is responsible for furnishing or identifying medical and other evidence regarding her impairments[6], 20 C.F.R. §404.1512(e) provides as follows:

>    [w]hen the evidence . . . from your treating

----

[5]*See supra* p. 10.

[6] *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Doughty v. Apfel*, 245 F.3d at 1278; 42 U.S.C. § 423(d)(5) ("[a]n individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require").

physician . . . or other medical source is inadequate for us to determine whether you are disabled, we . . . will first recontact your treating physician . . . or other medical source to determine whether the additional information . . . is readily available. We will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques. We may do this by requesting copies of your medical source's records, a new report, or a more detailed report from your medical source, including your treating source, or by telephoning your medical source.

It is the opinion of this Court that the ALJ should have sought clarification from Dr. Michael. Based on the discussion above, Dr. Michael's reports clearly contain some conflict or ambiguities, although the ALJ only noted the portions of the reports in favor of his decision. Further, while the ALJ discredited Dr. Haney and found his opinion to be "totally lacking in objective test" (Tr. at 21), he could have sought clarification from Dr. Haney as to what "medically acceptable clinical and laboratory diagnostic techniques" he used in forming his opinion. This is particularly so given that Dr. Nuckols seemed to rely largely on Dr. Haney's opinion.

Therefore, this Court is remanding the present case to the ALJ for further clarification and consideration of Plaintiff's treating physician, Dr. Michael, and the consultative psychologist, Dr. Haney.

IV.    Conclusion.

Upon review of the administrative record, and considering all of Ms. Robinson's arguments, the Court finds that the ALJ's decision is not supported by substantial evidence.  For the foregoing reasons, the ALJ's denial of benefits is **vacated**, and the case is **remanded** to the ALJ for further proceedings consistent with this opinion.  A corresponding order will be entered contemporaneously with this Memorandum of Opinion.

Done this <u>29th</u> day of <u>March 2010</u>.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
153671